Good afternoon. You may be seated. This is 4-13-1057, Aaron Carter v. State Farm. Attorney Noll is here on behalf of the appellant. Attorney Meade is here on behalf of the appellee. Ms. Noll, you may proceed. As you said, my name is Sarah Noll. I am representing the plaintiff today. And as you are also aware, we only have one issue for the court, and that's whether or not James Ellihan was a resident of 799 New City Road in the city of Rochester on February 25, 2007. This is the second time on appeal, and upon reviewing the case law on how one goes about making a determination of contractual residencies in these cases, it appears that there's about four essential areas of inquiry. The first is, of course, commonsensical. How does one become a resident of a household when looking at contractual definitions of the same? This is not a legal residency question. It's not a domicile question. It's only one of contractual residency for insurance purposes. The second point of inquiry is whether or not any facts exist that support or contravene a finding of residency for contractual purposes under the current fact pattern. The third is whether or not a person's residency at one of those necessarily prohibits that person from holding a contractual residency at another premises. And the fourth is whether or not Illinois mandates any preferences in regards to finding whether or not contractual insurance exists in favor for the insurer. Upon review of the case law, there's two seminal cases, Cincinnati v. Argybright and Hawkeye Insurance Company v. Sanchez. They're very specific in that when you make a determinative residency, it generally includes inquiry into an individual's intent, permanency of abode, and physical presence at residence. Now in this case, there's no dispute that Relihan was present at the property that's issued during February 25, 2007. So physical presence is not an issue in this inquiry. Similarly, I don't think permanency is a real issue. There's been no dispute that Relihan had been present at 799 New City Road since at least January of 2007. He came for a Christmas trip and then decided to stay, left his apartment, stayed at that point for over a year's time before he left the property. Wait, wait. Where did he stay for over a year's time? At this property at 799 New City Road. He arrived in January of 2007 and eventually left in, I believe, early 2008. Right, but as of the time of the incident, how long had he been there? February 25th, he would have been there approximately two months. I think he came on January 11th. So a little less than... I think there's been... Yes, Your Honor, you're right. I think there was a discrepancy between some of the depositions. My understanding is that Diane Munkers, the aunt, testified that he came for a Christmas vacation trip and that Relihan himself testified that he came in early January. So given that, you know, a week to two weeks change, I approximated that at about two months. So given those two issues, we have permanency there, not for a weekend or a week or two weeks vacation, but at least over a month's time, bordering on two months, and the fact that there is no contestation as to whether or not Relihan was physically present in the house, we need to turn to the real issue in this case, which is that of intent. And again, when I looked at Illinois case law, the intent was determined by looking at the actions of the person whose residency is in question. And I thought that was a very interesting point that the appellate court seemed to consistently make when determining contractual residency. Because it prioritized objective, fact-based inquiries into a person's activities over that of an individual's stated subjective state of mind. And this makes sense, because when you're dealing with a person who's saying something, they can say whatever they'd like after an event, but that does not really prove what their subjective state of mind was at the time of the insurance incident. But by looking at the objective actions of the individual and trying to determine intent, for example, such as where a person slept, where they ate, where they worked, where they socialized, where they earned income, you can make more of an objective determination of the circumstances of the person's residency that's supported by more than just words alone. And to some extent, you can even take that into a retrospective determination of the person's objective intent as well by inferring a reason as to why that person took the objective actions that they did. For example, where a person kept their clothing or personal hygiene items is indicative of where they subjectively intended to stay on the night in question. So I think that this is very telling in this case, Ambar, because this case does really come down to a case of semantics. James Rowland Hans said that he intended to live somewhere, but all the facts when you're looking at something from an objective point of viewpoint to a different determination in my point of view. Is there any dispute that shortly after arriving there and before the incident that gives rise to the underlying lawsuit that he visited with a recruiter? No, no. Apparently with the intent to enter the Air Force. Right, and I think I've addressed that pretty extensively in my reply brief. No, and the thing that's interesting about that is when you join the military, you don't change your residency or your contractual residency, and you don't change your state of legal residency either. You don't change your domicile. I flush that out a lot on page 8 of my reply brief and argument with the plaintiff appellant. And this makes sense, because when you are activated for military purposes, for example, I live in Illinois. If I went and enlisted tomorrow and they said, Sarah, you need to go to Afghanistan, I wouldn't change my residency or even my contractual home or my insurance policies based on the fact that I was going to be in Afghanistan for a year. You wouldn't do it automatically, but you might do it. Not for home of record purposes. No, I do disagree with that. Again, if you look to my reply brief, James Relihan signed a contract that said I will not change my home of record for the duration of my military services. But his home of record, he listed as the Rochester residence, right? Yes, he did. But does that necessarily mean, if he's giving a home of record, that means his mail will go there, important communications? Correct. That's a different issue than am I a resident at that location. I think it's an objective fact that points towards his state of mind at the time that he was intending for his contractual residency to be at that Rochester address. Let's say, for example, you're thinking about joining the military, you give up your apartment and you give your mother's address as your home of record so that your mail can keep going to one place and you know where it's coming. You don't live with your mother, you live somewhere else. And that's entirely the appellate court's position in the Supreme Court's explanation in Franklin. When they talk about home of record, they use the term usual residency. Usual residency refers to a person's typical place of abode. So where they typically reside. And then remember, again, when we're dealing with these contractual issues as to residency, a person can have more than one place where they reside from a contractual perspective. They're not bound to just one place. The Franklin court was very clear that when you're talking about a standard measure of state affiliation, one looks to where an individual typically has ties to a certain point or location. So in that case, a simple inquiry would be where a person sleeps, eats, and works. So yes, I do think that when an individual signs a document stating this is my home of record and I'm not going to change it for the entire time that I'm in the military service and the legal ramifications of that is that after the person leaves that service, they are returning to that same state and location that they used, then yes, that's indicative of long-term plans to utilize that address. And again, even if a person has more than one address, that does not in any way prevent them from having a secondary one. Now you filed a motion for summary judgment too, right? Yes, I did. All right, so aren't you arguing it was inappropriate for the court to enter summary judgment in this case? Only in regards to the defendant's motion for summary judgment, not in regards to mine. So let me ask you this. If you moved for summary judgment, State Farm moved for summary judgment, the court considered the depositions, the affidavits, and all that was before it. It was going to be a bench trial anyway, right, eventually? Yes, ma'am. Okay. Well, I was going to move for jury, but I came into this case a couple years late, so there's a good chance that will be denied. Right, okay. So let's say the court looks at everything and it decides, here's the way the evidence is. It's even. I can't make a decision on really what the residence is. Who loses? Who's got the burden of proof? Well, I think that we have a burden of proof in showing by preponderance of evidence that Aaron Carter lives there, but I think when you're making a legal determination as to whether or not the facts support a finding of contractual residency, legally speaking the court is obligated to infer that in favor of my client and finding of coverage. And the case I'm referring to is, I just had it. Well, wouldn't your client, as the person who was hurt in the bar, have the burden of showing that Releman was a resident at the Rochester address? Correct. And if she doesn't carry her burden by a preponderance of the evidence, doesn't she lose on that issue? Sure. Absolutely. But I think she's met her burden of proof. I mean, here is an individual that sleeps somewhere every night, eats all of his meals in a certain location his night, whose sole source of income is from that location. Right. But on the other hand, you've got the owners of the residence saying, he was a guest in our home. He was only staying here until he left for the Air Force. Yes. But the owners of the residence are not the point of inquiry. The point of inquiry is the contractual definition of a residence. And if it's under dispute and if the household resident has no meaning and is undefined under the contract, it's construed most strongly against the insured and liberally in favor of the insured, who, of course, the proposed insured in this point would be James Ellihan. And the case I'm referring to is Hawkeye Section Insurance Company v. Sanchez, page 186 of that case. So again, when you talk about whether or not I've met my burden of proof, yes, I have all these facts in support of my position. But also when you're looking at whether or not you're looking at a legal construction of a residency issue under state of Illinois law, it is supposed to be construed in favor of my client. So the testimony from the owners is totally irrelevant? I think that the testimony in regards to the facts are not irrelevant. But I do think whether or not their subjective state of mind is irrelevant because that is not what the appellate courts say is the proper point of inquiry. The appellate courts say that the proper point of inquiry is the objective actions of the proposed insured. Who is James Ellihan? They expressed an opinion, however, did they not? Yeah. Was that objected to? He was visited. On relevancy grounds? I would have to pull the deposition. I think it's been a disputed issue. But again, I don't have the deposition right in front of me. I'd have to pull the file. I know it's been a disputed issue. Again, because when you looked at the objective actions of the individual involved, it's not the same as a person's subjective intent afterwards when they're wondering about whether or not their insurance rates are going to rise as a result of having to pay this incident. So again, when we look at these issues as to intent, the courts, again, look at these objective inquiries, such as where a person slept, ate, worked, socialized, earning income. So we look at Ellihan's actions under this case law, and his actions are pretty clear. He received wages in Rochester. He lived in Rochester with his family. He shared a room with his brother there. He had a key to the Rochester address. He previously had already abandoned the apartment in Missouri. He testified under oath that he had no intention of ever returning and, in fact, never has returned. So your position would be his subjective intent is also irrelevant. I think that when you're looking at a person's stated intent versus the actions, the actions carry significantly more weight, especially when you're dealing with a situation. That doesn't answer my question. They may carry more weight, but is his intention, his subjective intention, relevant? Well, the stated prong for that point of inquiry under case law is you look to the person's intent as evinced by their actions. So, yes, I do think it is. The actions speak louder than words, especially in cases like this where people don't necessarily... Is that the State Farm versus Martinez case? It is. A couple of cases, actually. Are either of them Supreme Court cases? I'm sorry, Your Honor? Is either case a Supreme Court case? The other one was Supreme Court. Sure, let me just pull them up for you. Thank you. State Farm versus Martinez is 1st District. Cincinnati is 3rd District. Franklin is a Supreme Court case, but again, that deals with how home of record is construed. Hawkeye is 1st District. And looks like... No, there's no Supreme Court cases either way. So there's no Supreme Court case that has ever said that it is improper to at least take into consideration to some extent the subjective intent. No appellate court case or Supreme Court case that I know of has ever said you cannot take the subjective issues of a proposed insured into account. But all of the ones that I have reviewed say you look to the actions of the insured when determining intent. And none of them said that you looked at the subjective intent. Absolutely none of them. And those come from different districts. Would you agree that probably, and I don't think this is a concession that has to do with your argument, which is probably the aunt and the uncle and this young man were not thinking that that was going to be his permanent abode? I mean, that... I... But again, that's subjective because you don't know what would happen. It's subjective, yes, but I also take issue with how you would define permanency because... Well, how do you define permanency? Right. If abode means something slightly different than... Property. Property or contractual residence, permanency of abode is one of the things you use in determining what residence is. And when you've got somebody visiting a recruiting officer, plus the aunt and uncle saying, you know, with relatives it's almost like, well, he's only going to be here a few weeks. We sure as hell don't want him for six months or a year. It doesn't sound like it's describing permanency. Well, and I think, again, I don't think that permanency is a weekend or a week, but when you start talking about it in terms of several weeks or several months, then yes, I think it does. And in this case, James Relihan was not planning on leaving in February to join the Air Force. He had not even completed or had all of his security clearances that I know of. And the brief says he didn't end up going to the Air Force anyway. Exactly. But he does go to the military. Over a year later. And then is he a resident? I mean, that's the point I'm trying to make. The fact that somebody might have plans to leave at one point doesn't mean that they don't have permanency for the near future. And I think a great case... Well, the near future, though, is affected dramatically by the criminal case, isn't it? Well, sure. But then again, there's no saying that everything would have panned out with the Air Force even if the criminal case hadn't happened. And that's what I talk about. You have to have some... When you talk about permanency, it doesn't have to be a year or two years or three years. It has to be somewhat for the foreseeable future. And again, I think a great case to look at that issue of permanency is the Cincinnati Insurance Company v. Argybright. There you have a family that had a home in one city and was planning at some point to move to a second home. And the person literally split their time almost 50% between the two residencies. And the court specifically found that there was residency for the disputed property even though the time was spent equally and there was an intent to not always remain at one of the properties in the future because they had not yet moved. And that was, in that particular case, it was the family that owned a residency, the residency in the town in which they worked. They ran a restaurant and then they had also bought a second apartment and they were planning on moving and so they split their time back and forth. Well, under Cincinnati, you can have more than one residency and the court determined that that was the case because of the fact that even though they might have an intent to leave, which is what I think you're getting at with Mr. Relihan in terms of permanency, that doesn't mean that he didn't have residency for the while that he was still staying at the property in question, especially when you're looking at this from a contractual point of view. Sorry, I've lost my place here. So again, under Cincinnati, Relihan could have a single domicile, yet multiple residencies at various properties. Under that reasoning, we know that Relihan could be found to reside at a Rochester address even if one accepts that he's going to eventually have a second residency somewhere else, contractually speaking, or if one even disregards the fact that he testified that he had already abandoned the Missouri apartment and stopped paying for it prior to February 25th. Under Cincinnati, this makes no difference. The court specifically found that a person might have a single domicile but that they can have more than contractual residency. And again, that makes sense. If I buy a vacation home tomorrow and I only want to spend three months there of the year prior to residency, well, for contractual purposes I would certainly hope so, what if there's a fire? Or if I have a business that maybe I open a second business address at, and I live here now but I go up to Chicago for that second business and maintain a second apartment, maybe I don't even spend all my time in that Chicago apartment. For contractual residency purposes, the fact still remains that I'm not disqualified from having a second residence based upon the fact that I spend a substantial amount of time elsewhere, even if I was planning on moving or finding a different apartment in Chicago once my business got underway. It doesn't change the fact that at the time when a person's spending every night there, all of their food's there, all of their clothing's there, all of their toothbrush, their car, all of their socializing, their income is at this address, is generated from this address, even if you have other residencies. How do you weigh, though, after actions with before actions in terms of the incident that we're talking about? Sure. At the time of the bar, knife cutting, whatever we call it, we don't have all this, it took him another year to go away, or there are different stories about deployment. Right. The question would be whether there's contractual residency on February 23rd. And then my answer is still in the affirmative because of the fact that he slept there every night, he earned all of his income there, he received his mail there, he didn't go back to Missouri, he abandoned his property, he took all of his personal possessions to Rochester. If he didn't have residency at Rochester, where did he have it at? Well, did he continue to pay the leasehold in Missouri? No, he didn't. According to all of the depositions, he stopped paying for the apartment in Was the lease contract still in effect in Missouri? Sure, it was, but he wasn't paying for it, he abandoned it. The only property that he left in Missouri, he testified that he gave away to his previous owner. Well, he didn't abandon his obligation. Well, he did because he didn't pay it. I think his aunt actually stepped in and paid it for him at one point. That's what both Diane Munkers and James Relihan testified to. But he certainly didn't fulfill his obligations. He abandoned it. Okay, thank you. Ms. Noll, you'll have more time on rebuttal. Thank you. Mr. Main? I think the factor that makes this case interesting, if not unique, among these residency cases is the fact that the putative insured is disclaiming residency. I don't recall any other cases really involving that.  Mr. Relihan, I think quite candidly, said no, I never set down roots at this place. I think all the evidence together indicates it was more of a transitional place where he was as he was leaving his former residency in Missouri and hadn't established a new residency anywhere but intended to go into the  As I read the case law, there's no requirement that one always have a quote-unquote residence, that it can be without residence for a while. And I think that's the situation that we have here. So the case law says you can have dual residency and no residency? I believe that's correct, yeah. You know, if he were the injured party here, he might have a different position on whether he's insured or not. He might. Yeah. I would think that he would have had a different opinion anyway, that both his aunt and uncle and him had been resolute throughout this controversy that no, he was just visiting for a little while and he was going into the military. And I think that's important because when we start looking at conduct rather than statements, we always look at conduct to see if it's disproving the statement. You know, look what I do, not what I say, sort of an analysis. But here we have, that's why I think this is unique, we have yeah, I was not a resident and I believe that's also borne out by the facts. So I think it's, to get back to your question previously, I think it's both relevant to consider the subject statements, which in this case are statements against interest of the punitive insured as well as the facts as to what they were doing at the time. Would you agree, however, that his actions carry more weight than his words? I think it usually does in most of these cases. But in this case, and I'm always hesitant to use the word unique, but I think this one may be where the insured is disclaiming coverage on his own. That's why I think that his statements subjectively rise a little in importance. I mean, from my first job I always learned that it was more important to have circumstantial evidence on your side rather than eyewitness testimony. And so there's a little of that in this, but I think in this case they're probably of equal importance. And they tend to supplement each other. Because he was in Missouri, you know, he's got his meager, granted meager possessions that he had down there when he was in school. Still, he gets his mail down there, he calls and said, do I have any mail, you know, to his roommate. During this brief, I think about a six-week transitional time between the time he comes up and starts living with aunt and uncle and the time he's supposed to go to the, well, at the time the knife incident happens, basically, which I think changes everything. And that's why I don't think it's legitimate to consider any acts after that as far as evidence of his intent. Because that's obviously the big gorilla in the room at that point, he has to stay, I'm sorry. Was he asked at his deposition if he had put in for a change of address at the post office? I believe he was, or somewhere that came up, but he had not changed his address. He would instead would call back to Missouri and say, hey, do I have any mail, and then if it was anything other than junk mail, ask his roommate to send it up, if I recall. And the policy doesn't define resident. No. We're left to plain, ordinary meeting. And, you know, what's provided us, I think I quoted a case as far as context. I suppose that's as good. You know, residence for that is probably the same, or at least the same policy considerations. Justice Pope asked opposing counsel about the burden of proof in this case, given the posture of this case, and her response, what's your response? Yeah, she has the, the plaintiff has the burden, the one seeking coverage has the burden of establishing. And the fact that the posture is that we're hearing a summary judgment doesn't affect that as an underlying basis? I don't think so, because she would have the same burden. Now, usually we're looking as to whether there's a genuine question of material fact. I don't think there was in this case, and I point out in the end of my brief, the futility, even if there were, of holding to that standard, because we're going to be going back to the same judge for basically a third trial on stipulated evidence, if almost, you know, the evidence isn't going to change. Admissions against interest aren't going to change. So I'm like, why are we bothering to do that? He's already ruled twice on this thing. But there is that subtle difference that this is in the context of denial of motion for summary judgment. So you have to look at whether there's a question of fact. I don't think there's a question of fact here. I think when you combine both the subjective statement of intent, and that's why we went back last time, was to discern that intent, you know, just the opposite of residence, but that he was in this transitional phase. I think it becomes really a lacking of any question of his intent was not to make this his residence, as that term is understood, but to be just sort of a waiting station until he shipped off. Ms. Snow's argument was if the evidence is even on the question of whether or not he was a resident, then you construe the policy in favor of the insured, and you find coverage. The insured isn't seeking coverage. Well, the site first said you construe it against the insurer, and then liberally in favor of the insured. And does that depend upon whether the insured wants it to be liberally insured? That's a good question. It is. I don't think so. I mean, I would think that they would maintain whoever's seeking to change the status quo has the burden of proof or persuasion on that issue would be my guess, Judge. But can I point to a case that says anything? I cannot. I thought that was interesting. I mean, obviously, well, the situation here is different, but the premise is if the resident of the household is undefined, and what we've got here is there are indicia of some kind of residence, and there's also indicia of transition and lack of permanency. But if it's like that, why should construing it against the drafter of the document that's at issue change simply because the insured is not claiming it for whatever reasons? I mean, if the principle is you construe it against the insurer and provide the benefit to whoever's supposed to receive it, would it make good public policy to change it because for some reason this individual doesn't want to have the benefit of the policy? I mean, that's what I was thinking. How am I going to answer this other than a public policy basis? I mean, if the court wants to say it's more important that we create some kind of fund for a potential recovery than it is to uphold some sterile reading of the term residency or however we choose to characterize that, then I suppose, I don't know if that's the court's prerogative or not, but I think that's a dilemma if you want to go that way. It's going to have to be on a public policy basis. But I don't think that we get that far because I think the burden of proof remains with the plaintiff. And I don't think we're in a balanced evidence situation. I mean, the trial judge certainly had no problem in construing these things twice and finding that that burden wasn't met. So I really don't think that we're in that situation to begin with. But we do have the oddity of him testifying in a particular way, which would ordinarily be the opposite of what you'd expect him to testify to. And then cynical people might say, well, he doesn't have anything anyway, so he protects his aunt and uncle from increased insurance rates or trial and tribulation. I don't know. I don't know how rates are fixed, and there's certainly no evidence about that or any motivation type evidence. I'm not suggesting there is. The thing that I think is important about that is because it is against his interests, and I think that that's what elevates his subjective statements more rather than we can speculate. Could we speculate the unthinkable, that he's just honest? I think that he's really telling it how it was. I lived in Missouri. It didn't work out. I'm trying to go into the military. My aunt's helping me out, you know, get in the military, and I'm living in the barracks room with my brother during the meantime, and I haven't put down roots. So I think that really is what the situation is. Any other questions? No. Thank you. Thank you, Mr. Mead. Ms. Noll, do you follow? Thank you. Well, I think in regards to the last point there as to incentives, it's pretty clear from the record that James Ellingham left the state, joined the military, and pretty much evaded coming back to participate in this case ever since until I managed to find him since, myself, I am in the military. So that is what happened. He had answers filed saying he was deployed when he was not, in fact, deployed. That's also in the exhibits that have been attached that were discovered during the PI case. So that's what happened with Mr. Ellingham, and that's also admitted to during his deposition, which was attached to my motion. He said, no, I was not deployed when I said I was deployed, and I don't know why anybody would say I was deployed for discovery purposes. I'm in Bloomington. So that's what happened. But I'd like to touch a little bit more about this issue of him planning on leaving to the military. Because as a matter of law, when somebody joins the military, their legal residency, their contractual residency, their domicile, even the state that they have their driver's license in does not change. And the military does that purposefully. The reason it does so is because people are typically sent to training schools that last from six to eight weeks. Those are minimum, basic. And then they go off to these longer training schools. And if you have a specialized MOS, a specialized type of military work that you're going to be doing, you can go to schools that last five to 11 months. And that is why when you sign up for the military, you have a home of record. Because if you're using mom because maybe you're 18 years old and you're living with your mom. What if you get married and you live off base? They have a different terminology for that. If you get married and live off base, you can have something called VAH. And this is way beyond what I've briefed in here. But you don't have to change your driver's license, your legal residency, or anything. Because the military might say for a year you're going to live in Alabama. Next year you're going to Alaska. Next year you're going to Florida, especially if you're full-time active duty status. Now, he joined the reserves. So, again, that doesn't play into it. It would just say Illinois eventually, but that was later. So that's why the military, as a matter of law, does not have you change your state legal residency. Because every time they moved you somewhere else on orders to go serve for the country, you have to change all of that information. So you do not change those things upon enlistment. Is that done for the convenience of the service person, serviceman, or service lady, service woman? Or is it done for the convenience of the Army? Well, both. But it doesn't change the matter as an issue of law. Because when James Relihan signed this thing saying, I am declaring this to be my home of record, that was a declaration that he had a home of record in the state of Illinois. And he was using that address. Home of record in that contract he signed says that I, and this is a quote, I understand my home of record and place of enlistment in my DD-4-1, which is a federal document that the court, it's a contract document that the court can take judicial notice of, cannot be changed while I'm in the Air Force. And the military does that because starting from Vietnam all the way to present time, they've had to move all these service members around. And so when they talk about home of record, they talk about, and this is a quotation, usual residence. And that's under Franklin, the U.S. Supreme Court case I spoke about earlier. And the term usual residence is used in the Franklin case is very telling, I think. Because it doesn't refer to legal residency, and it doesn't refer to anything more than the person's typical place of abode. It refers to their standard measure of state affiliation. James Ellingham had no state affiliation with Missouri at the time. His only affiliation was with this residency. And the fact that he joined this military branch, or attempted to join this military branch, does not change the fact of where he actually had a contractual residence at the time that he signed that document to enlist. It had no legal impact on his contractual residency whatsoever as a matter of law, because the military wasn't going to change any of that anyway. And again, looking forward, he came back to Bloomington. He came back to Illinois. But when you talk about legal residency, I think in this case it's really important not to confuse legal residency or domicile with the idea of contractual residency. You can have many different contractual residences that you are covered from by basis of your tangible affiliations with that particular premises, based on the objective actions. And that's what the appellate courts have said across the board in every district that I've checked in regards to this case. You look to the objective actions of the person at the time of the event. And the objective actions at the time of this event was that every single tie he had was to the 799 New City Rochester address. And he wasn't going anywhere until he joined the military. And even if he did join the military, that wasn't going to change his residency anyway. Thank you. Thank you, Ms. Schultz. We'll take this matter under advisement and be in recess.